**UNITED STATES of America,**
**Appellee,**

v.

**Michael Wayne THOMPSON, Appellant.**

**No. 74-1152.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 9, 1974.

Decided Sept. 25, 1974.

See also, 8 Cir., 493 F.2d 480.

Daniel C. Galvin, Sioux City, Iowa, for appellant.

Robert L. Sikman, Asst. U. S. Atty., Sioux City, Iowa, for appellee.

Before LAY, ROSS, and WEBSTER, Circuit Judges.

PER CURIAM.

Michael Thompson was convicted by a jury of ten counts of transporting and causing to be transported falsely made and forged securities in the form of bank checks in violation of 18 U.S.C. §§ 2 and 2314. He appeals, asserting two assignments of error—(1) that the trial court erred in admitting into evidence testimony concerning the results of a search which was conducted some four months before the crime charged in the indictment was allegedly committed, and (2) that the trial judge abused his discretion in sentencing him to prison for seven years while placing his brother, a codefendant, on probation. We affirm the judgment of the trial court.

Some time after July, 1971, the Sioux City Dressed Beef Division of Needham Packing Company switched its main checking account from the First Nation-

al Bank of Minneapolis, Minnesota to the Omaha National Bank in Omaha, Nebraska. Old blank general account checks drawn on the Minneapolis bank were taken to the city dump to be buried. Edward Thompson, the appellant's brother and codefendant in the trial below, found a number of these blank checks and, together with Michael, developed a plan to make money by forging signatures and passing the checks. There was evidence that both brothers had been employees of Sioux City Dressed Beef at various times during the first half of 1971.

Loren Barbee testified that the Thompsons recruited him to participate in the scheme during February, 1972. He, in turn, recruited two teenage boys to actually pass the checks. As described by Barbee the plan was very simple. The Thompsons merely typed up the checks with the named payee as "Robert Creasey" in an amount of around $119.00 and gave them to Barbee, who then took the checks and the teenagers he had recruited to various businesses in the Sioux City area. One of the teenagers would sign the check "Wayne L. Thompson" on the front; and, using false identification, the other teenager would enter the business establishment, endorse the check on the back as "Robert Creasey" and obtain cash, which was divided among the participants in the scheme. The evidence indicated that a "Wayne M. Thompson" was, in fact, authorized to write and sign checks on behalf of Sioux City Dressed Beef.

During the course of the trial the government introduced into evidence, over objection, testimony of a police detective named Michael Larson regarding items which had been seized in a search of Edward Thompson's house pursuant to a search warrant which was executed on October 4, 1971. Larson stated that at that time he had found over five hundred blank checks belonging to various businesses and individuals and a check protector (a device for printing the amount of the check on the face of it

in such a way as to make it unalterable) in Edward's home. Michael was not in the house at the time of this search and he did not live there, although he was a frequent visitor. However, this entire incident was tied to Michael by the testimony of government witness Connie Nolte, who testified, over objection, that in September, 1971, she was taken to Edward's home by Michael, saw some of the checks later taken in the search, and that she had then been involved in another scheme to cash forged checks with both Michael and Edward.

This Court has recently summarized the rules which are applicable to the question of admission of evidence of prior criminal conduct of a defendant in United States v. Cochran, 475 F.2d 1080, 1082 (8th Cir.), cert. denied, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973).

Well established rules have developed concerning the admission of evidence of other criminal conduct. Although this evidence is generally inadmissible since it suggests that the defendant has a propensity to commit crime, the trial court can in its discretion admit relevant evidence of other criminal acts and reversal is only commanded when "it is clear that the questioned evidence has no bearing upon any of the issues involved." Wakaksan v. United States, 367 F.2d 639, 645 (8th Cir. 1966), cert. denied, 386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed. 2d 341 (1967). The trial court in determining admissibility weighs the prejudicial effect against the probative value of the evidence of the other criminal conduct. Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85, 90 (1964). In applying this weighing analysis, trial courts are aided by recognized exceptions to the admissibility of evidence of other crimes or criminal conduct. Such evidence is relevant to prove "(1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each oth-

er that proof of one tends to establish the other, and (5) identity of the person charged with the commission of the crime on trial." Drew v. United States, *supra,* 331 F.2d at 90 (footnote omitted), *quoted* in Love v. United States, *supra,* 386 F.2d [260] at 266; United States v. Lewis, 423 F.2d 457, 459 (8th Cir. 1970); Proposed Rules of Evidence for United States Courts and Magistrates, Rule 404(b), 51 F. R.D. 315, 346. (Footnote omitted.)

*See also,* Sears v. United States, 490 F. 2d 150, 152 (8th Cir. 1974); United States v. Olsen, 487 F.2d 77, 79–80 (8th Cir. 1973), cert. denied, 415 U.S. 993, 94 S.Ct. 1594, 39 L.Ed.2d 890 (1974); O'Reilly v. United States, 486 F.2d 208, 211–212 (8th Cir.), cert. denied, 414 U. S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973); C. McCormick, Law of Evidence § 190 (2d ed. 1972).

■ In the instant case we are satisfied that Larson's testimony regarding the results of the search was properly admitted to prove intent, knowledge and a common plan or scheme. This evidence, together with the testimony of Connie Nolte, established that a few months before the commission of the offenses alleged in the indictment Michael and Edward Thompson had engaged in a plan to forge and cash checks in a manner very similar to the method used in this case. It also established that they had had available to them blank checks belonging to others and a check protector—an instrument which could play a role in carrying out their plans. In short, the testimony of Larson and Nolte together tended to show both a prior uttering and a prior possession of forged checks. This, in turn, may clearly be utilized to prove intent, knowledge and a common plan or scheme. 2 J. Wig-more, Wigmore on Evidence §§ 310–315 (3d ed. 1940).

■ The fact that the checks and check protector were found in Edward's house and that this evidence tended to show criminal activity of a person other than Michael makes no difference here, since the evidence shows that Michael was closely involved as one of the participants in the criminal scheme which touched off the search. This evidence was properly admitted to show knowledge and participation in a common plan or scheme on another similar and related occasion. Sears v. United States, *supra,* 490 F.2d at 153. It was therefore not error to admit the evidence in question.

Thompson's argument that the trial judge abused his sentencing discretion is equally without merit. In Woosley v. United States, 478 F.2d 139 (8th Cir. 1973) (*en banc*), this Court held that it has power to review a sentence imposed by a district court within statutory limits where that court fails to exercise its discretion and mechanically applies the same punishment to all offenders or where the sentencing judge does exercise discretion but "manifestly or grossly" abuses it. *Id.* at 147.

■ In this case the very fact that the trial court sentenced Michael to seven years imprisonment while placing his brother, who was convicted of the same violations, on probation demonstrates that the judge was exercising his discretion and not taking a mechanical approach. Michael could have received a sentence substantially in excess of the seven years imposed. Under these circumstances we find no abuse of discretion in the sentence imposed on Michael Thompson.

The judgment of conviction is affirmed.